70237. SIMMONS v. BOROS et al.
(335 SE2d 662)

DEEN, Presiding Judge.

Appellant Bobby Simmons brought an action *pro se* against Boros individually and as owner of a garage specializing in repair of certain foreign automobiles. He alleged that Boros had broken a contract to repair the engine of the used Fiat Spyder which Simmons had bought three weeks prior to first taking it to Boros. Simmons alleged that Boros' work was unsatisfactory and that, after taking the car back to Boros several times, he had ultimately taken it to several other mechanics for various repairs ranging from radiator to cylinders to door locks.

Nearly two years after first taking the car to Boros, Simmons filed the action below, and it went to trial. At the close of Simmons' evidence, the defendant moved for a directed verdict on the ground that plaintiff had failed to prove damages. The court granted the motion and Simmons appeals, enumerating as error the direction of the verdict and three errors having to do with the court's allegedly having tried the case on a negligence theory rather than as a breach of con-

tract. *Held*:

1. Scrutiny of the pleadings and the evidence presented at trial reveals no error on the part of the trial court involving legal theory, including those theories named by appellant in his enumeration of errors. "Damages growing out of a breach of contract, in order to form the basis of a recovery, must be such as can be traced solely to the breach, must be capable of exact computation, must have arisen naturally and according to the usual course of things from such breach, and must be such as the parties contemplated as a probable result of the breach." *Sanford-Brown Co. v. Patent Scaffolding Co.*, 199 Ga. 41 (33 SE2d 422) (1945), quoted in *Bennett v. Assoc. Food Stores*, 118 Ga. App. 711, 714 (165 SE2d 581) (1968); see OCGA § 13-6-2. The transcript of the trial held in the instant case shows that the court recited this standard for proving damages in his remarks preliminary to directing the verdict for appellee. There is no evidence of record supporting appellant's contention that the court applied a negligence theory rather than a contractual.

"Generally, the proper measure of damages for defective workmanship would be the cost of repair of the defect." *Adamson Co. v. Owens-Ill. Dev. Corp.*, 168 Ga. App. 654, 657 (309 SE2d 913) (1983); *Holder v. J. F. Kearley*, 153 Ga. App. 843 (267 SE2d 266) (1980). As a prerequisite to determination of the proper measure of damages in a given case, however, "[t]he burden is on the plaintiff to show *both* the breach and the damage, . . . and this must be done by evidence which will furnish the jury data sufficient to enable them to estimate with reasonable certainty the amount of the damages . . . It cannot be left to speculation, conjecture and guesswork." *Bennett v. Assoc. Food Stores*, supra at 716 (emphasis supplied); *Hospital Auth. of Charlton County v. Bryant*, 157 Ga. App. 330 (277 SE2d 322) (1981).

The record in the instant case reveals that the plaintiff presented his evidence under various *ex contractu* rubrics (breach of warranty, unjust enrichment, benefit of bargain, etc.) but in so doing failed to prove either the alleged breach or the alleged damages in a manner conforming to the criteria set forth in OCGA § 13-6-2 and in *Bennett*, supra. Cf. *Carr v. Jacuzzi Bros.*, 133 Ga. App. 70 (210 SE2d 16) (1974). Appellant's first and second enumerations are devoid of merit.

2. OCGA § 9-11-50 (a) authorizes direction of a verdict "at the close of the evidence offered by an opponent or at the close of the case . . . [i]f there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. . . ." If the testimony presented by the plaintiff, together with the reasonable inferences to be drawn therefrom in the light most favorable to him, makes a *prima facie* case, however, then the direction of a verdict for defendant is not authorized. *Lashley v. Ford Motor Co.*, 359 FSupp. 363

(M. D. Ga. 1972), aff'd 480 F2d 158 (5th Cir.), cert. denied 414 U. S. 1072 (94 SC 585, 38 LE2d 478) (1973).

In the instant case the basis of Boros' motion for directed verdict was Simmons' alleged failure to prove damages. We have held in Division 1, supra, that he did not carry his burden of making out a *prima facie* case; that is, of proving either breach or damages. It is true that many evidentiary details were inconsistent with one another; that is, there were conflicts in the evidence. None of the disputed evidence, however, pertained to a material issue of the case. Here, as in *Carr v. Jacuzzi Bros.*, supra at 74, "[p]laintiff simply failed to prove his case and the direction of a verdict was proper. [Cit.] The mere existence of conflicts in the evidence does not render the direction of a verdict erroneous if it was demanded, either from proof *or from lack of proof* on the controlling issue or issues. [Cit.]" (Emphasis supplied.) See also *Gillen v. Coconut Grove Bank &c. Co.*, 172 Ga. 908 (159 SE 282) (1931); *Stewart v. Western Union Tel. Co.*, 83 Ga. App. 532 (64 SE2d 327) (1951). The trial court did not err in directing a verdict for appellee.

*Judgment affirmed. Banke, C. J., Birdsong, P. J., Pope and Benham, JJ., concur. Sognier, J., concurs in the judgment only. Mc-Murray, P. J., Carley and Beasley, JJ., dissent.*

BEASLEY, Judge, dissenting.

The defendant moved for a directed verdict on the grounds that there was no evidence of damages attributable to defendant's work on the vehicle and no evidence of plaintiff's ownership of the vehicle. The latter basis was properly rejected, as there was some evidence in that regard. As to the first basis, however, the court found that with respect to proof of damages, there was no evidence showing the value of the vehicle before the repairs and concluded that this was a fatal omission. Consequently, the court granted the motion made at the end of plaintiff's case.

Although plaintiff's amended complaint contained both tort and contract claims, his position throughout the trial was that he was proceeding on a breach of the contract to repair and breach of the 60-day or 6000-mile warranty that was part of the contract. The contract was partially oral and partially in a written repair order which outlined what was ordered, what work was performed, what parts were supplied, and the amounts charged and paid. In essence, as demonstrated by the documents and testimony presented by plaintiff, the agreement was for defendant to overhaul the motor and give the warranty, in consideration for $500 plus the cost of parts. Plaintiff paid $1,372.96 for this work and warranty. He testified about the immediate and continuing problems thereafter, the inoperable condition of the car, and his ultimate obtaining of an analysis and cost breakdown

from Troncalli Motors for repairing the engine. The analysis identified certain "discrepancies on your engine" which impliedly were occasioned by defendant. The service operations manager who provided the written analysis testified about it and about the written cost estimate, which was $1,763.17.

In considering the motion for directed verdict, the court did recite in essence the measure of damages for breach of contract set out in OCGA § 13-6-2. However, the court did not apply it or the principle contained in OCGA § 13-6-1: "Damages are given as compensation for the injury sustained as a result of the breach of a contract."

Instead, the court departed from contract damage principles and based its ruling on the measure of damages in cases involving the tort of negligence. The court specifically relied upon *General GMC Trucks v. Crockett*, 145 Ga. App. 503 (2) (244 SE2d 78) (1978), a tort case, for the proposition that plaintiff must prove that the cost of repairs does not exceed the value of the vehicle before the injury.

While it is true that there was no evidence of value of the vehicle before the defendant undertook the repairs, the law of contracts does not require proof of such a fact as part of plaintiff's prima facie case on the element of damages. The measure for breach of contract of repair or warranty is not the difference in the value before and after the allegedly defective or uncompleted repair, or the cost of repair so long as it does not exceed what the value of the property was before the defendant worked on the property. If that were the case, a mechanic could agree to do a $1,000 repair job on a car worth $1,000 before the work was done, do it defectively or not at all and get paid the $1,000, and because the car was still only worth $1,000 in its unrepaired or improperly repaired condition, be liable for nothing because correcting his work or doing it right by starting again would cost over $1,000.

As the trial judge initially pointed out, and as the majority recognized, the measure of damages for breach of what the repairman agreed to do is governed by OCGA § 13-6-2. In other words, the contracting party is entitled to the benefit bargained for, i.e., compensatory damages, and the measure for defective workmanship would be the cost, over and above what was already paid to defendant, to get the work done in conformity to the contract. As explained more fully in *Adamson Co. v. Owens-Ill. Dev. Corp.*, 168 Ga. App. 654, 657 (309 SE2d 913) (1983), "the measure of damages for breach of contract is the monetary amount which will compensate the injured person which a fulfillment of the contract would have prevented or the breach of it entailed and place the person in the position in which he

would have been if the contract had been fully performed."[1] Thus the plaintiff would be entitled to the costs reasonably necessary to achieve fulfillment of the defendant's promises, for which plaintiff had already paid in full. "Any necessary expense which one of two contracting parties incurs in complying with the contract may be recovered as damages." OCGA § 13-6-9.

In this case there was some evidence of that, and the absence of evidence regarding the value of the car before defendant undertook to repair it was not fatal. Under the circumstances, the question of damages is one for the trier of fact, *Tuten v. Beckham*, 162 Ga. App. 101 (290 SE2d 205) (1982), and consequently, I would conclude that the trial court erred in granting a directed verdict to defendant.

DECIDED SEPTEMBER 13, 1985 —
REHEARING DENIED OCTOBER 7, 1985 — ▆▆▆▆▆▆▆▆▆

Bobby D. Simmons, *pro se.*
*Joseph C. Rary*, for appellee.

---

[1] See also *Accent Walls v. Parker*, 162 Ga. App. 633 (1) (292 SE2d 509) (1982).